**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 24-cv-24633-JB

KAILEE HEADLEY,

     Plaintiff,

v.

MIAMI-DADE COUNTY PUBLIC SCHOOLS,

     Defendant.

_____/

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, The School Board of Miami-Dade County, Florida, (hereinafter "School Board," incorrectly named in this action as "Miami-Dade County Public Schools"), by and through the undersigned counsel and pursuant Fed. R. Civ. P. 56, hereby files its Motion for Summary Judgment and states as follows:

### I.     BACKGROUND

Plaintiff, a self-identified Black female, filed her Complaint on November 25, 2025 alleging two counts under 42 U.S.C. § 1981. Count I alleges retaliation under §1981 and Count II alleges race discrimination under § 1981. [DE 1]. Plaintiff served the Complaint on the School Board on December 4, 2024.  [DE 10].

In summary, Plaintiff's Complaint alleges that while working for the School Board as an interventionist, she was subjected to harassment based on her race, by her supervisor,  Heriberto Sanchez ("Principal Sanchez").  She claims that the Principal made unwanted sexual advances and racial comments towards her and that when she complained about these behaviors she was

1

retaliated against.  Plaintiff identifies no other alleged discriminators against her. [DE 1, ¶¶ 15-28].

The School Board is a government entity charged with the duty to operate, control, and supervise all free public schools within the school district of Miami-Dade County, Florida, pursuant to Article IX §4(b) of the Constitution of the State of Florida and §1001.32, Fla. Stat. (2025).  Moreover, the School Board itself is the sole entity capable of adopting official policy on behalf of the School Board.  See Fla. Stat. §1001.41 (2025).  This power is set by statute and not delegated to any individual employees of the School Board.

On December 20, 2025 the School Board filed an Agreed Motion for Extension of Time to Respond to the Complaint. [DE 11],  The Order granting this motion gave the School Board until January 10, 2025 to respond to the Complaint. [DE 12].

On January 9, 2025 the School Board filed its Answer and Defenses to Plaintiff's Complaint ("Answer").  [DE 13].   Paragraph 8 of the School Board's Defense and Affirmative Defenses asserted that, "Plaintiff has failed to allege that the School Board has a discriminatory policy, practice or custom that led to her injuries or damages which is required to bring an action pursuant to 42 U.S.C. § 1981, via operation of 42 U.S.C. § 1983."  [DE 13, p. 5, ¶ 8].

On November 18, 2025, The School Board filed its Motion for Judgment on the Pleadings which is predicated on the argument that Plaintiff failed to plead in her Complaint that the discrimination against her was the product of an official policy or custom of the School Board. [DE 27][1].  Since the filing of the Motion for Judgment on the Pleadings, Plaintiff's deposition was taken on November 25, 2025.  Plaintiff's deposition revealed that in addition to her failure to plead

---

[1] The School Board believes the Plaintiff's deficiencies with regards to pleading in her Complaint are fatal to her claims.  Nevertheless, those arguments previously addressed in the Motion for Judgment on the Pleadings will not be directly referenced in this Motion and only new arguments will be raised showing that even if Plaintiff's deficient Complaint were allowed to survive, that the School Board is still entitled to summary judgment on her claims.

that an official policy or custom lead to the discrimination against her, she is also unaware of any such policy or custom and has no information or evidence in order to establish that one existed. Moreover, she identifies Principal Sanchez as the sole discriminator against her and since he is not a final policy maker for the School Board, liability for discrimination under § 1981 cannot be based on his actions alone.  Finally, Plaintiff is unable to prove any adverse actions were taken against her employment or that any of the reasons given for actions taken with regard to Plaintiff's employment were pretextual.

## II.    LEGAL STANDARD

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and affidavits show that there is no genuine issue as to any material fact and that defendants are entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Swain v. Hillsborough County School Board, 146 F.3d 855, 857 (11th Cir. 1998); (Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Hegel v. First Liberty Ins. Corp., 778 F.3d 1214, 1219 (11th Cir.2015).  Not every factual dispute is material.  "[T]he substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248.  "If the evidence offered by the non-moving party is merely colorable…or is not significantly probative…summary judgment may be granted." Id. at 249-250.

The party seeking summary judgment bears the initial burden of pointing out the absence of a genuine issue concerning any material fact.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970).  An issue of fact is material if it is a legal element of the claim or defense under the applicable substantive law which might affect the outcome of the case.  Anderson, 477 U.S. and 248. If the nonmoving party fails to make a sufficient showing on an essential element of his case

with respect to which he has the burden of proof, the moving party is entitled to summary judgment. Celotex Corp., 477 U.S. at 323. The non-moving party may not defeat a properly supported motion by resting upon the "mere existence of some alleged factual dispute between the parties." Id. at 324. "To defeat a motion for summary judgment, the nonmoving party may not rely on 'mere allegations' [but] must raise 'significant probative evidence' that would be sufficient for a jury to find for that party." LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 835 (11th Cir. 1998). Summary Judgment is appropriate "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Williams v. Vitro Services Corp., 144 F.3d 1438, 1441 (11th Cir. 1998).

### III. ARGUMENT

Plaintiff brings her causes of action under §1981. However, Eleventh Circuit law clearly states that, where a plaintiff seeks vindication of rights secured by § 1981 against a state actor, §1983 provides the exclusive remedy for obtaining relief. Butts v. County of Volusia, 222 F.3d 891, 893 (11th Cir. 2000).

To be sure, the Supreme Court has held,

"… that the express "action at law" provided by § 1983 for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws," provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor."

Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 735 (1989).

Plaintiff has failed to even mention §1983 in her Complaint. Nonetheless, the remainder of this argument section will assume, viewing the Complaint liberally in favor of the Plaintiff, that Plaintiff intended to cite §1983 to support her claims in this suit but simply neglected to do so.

The Supreme Court has also long held that, "… to prevail on [her] claim for damages against the school district, petitioner must show that the violation of [her] "right to make contracts"

4

protected by § 1981 was caused by a custom or policy within the meaning of <u>Monell</u> and subsequent cases. <u>Jett</u>, 491 U.S. at 735-736 (referencing <u>Monell v. Dep't of Soc. Servs. of City of New York</u>, 436 U.S. 658, 690–91 (1978)). The Court in <u>Monell</u> also held that municipalities cannot be held liable under §1983 simply because they employ a tortfeasor, eliminating liability under *respondeat superior* theory. <u>Monell</u>, 436 U.S. at 691. It is only when the execution of a government entity's policy or custom inflicts injury on a plaintiff can a government entity be held liable under §1983. <u>Id</u> at 691, 694. As highlighted in the School Board's Defenses and Affirmative Defenses contained within its Answer, Plaintiff has failed to allege the existence of any policy or custom of the School Board that caused her claimed injuries. [DE 13, p. 5, ¶8].

    **A.**    **Principal Sanchez Is Not A Final Policy Maker For The School Board**

Plaintiff has identified Principal Sanchez as the sole a tortfeasor against her – the exact type of *respondeat superior* claim prohibited by §1983. To be sure, Plaintiff confirmed this belief in her deposition testimony. (Statement of Undisputed Facts ¶ 14). Plaintiff seeks to hold the School Board liable for the alleged actions of Principal Sanchez. To succeed on this theory of liability, Plaintiff must prove that Principal Sanchez possessed final authority to establish School Board policy with respect to the actions he took or ordered. <u>See Scala v. City of Winter Park</u>, 971 F.Supp. 528, 532 (M.D. Fla. 1996). Moreover, School Board liability in this case turns on whether Principal Sanchez possessed final policy making authority on the subject matter of the decisions, not just the decisions themselves. <u>Id</u>. at 532.

Whether a particular official possesses final policy-making authority is an issue of state law. <u>See Jett</u>, 491 U.S. at 737. This is a question to be resolved by the trail judge *before* the case is submitted to a jury. <u>Id</u>. at 737. In reaching this determination, the Court must adhere to the Supreme Court's admonition that "a federal court would not be justified in assuming that

municipal policy making authority lies somewhere other than the applicable law purports to put it." See The City of St. Louis v. Praprotnik, 485 U.S. 112, 126 (1988).  This Court previously recognized that "Under Florida law, final policymaking authority for a school district is vested in the School Board." Whittaker v. St. Lucie Cnty. Sch. Bd., No. 10-14172-CIV, 2011 WL 3424564, at *5 (S.D. Fla. Aug. 5, 2011) (citing Jett, 491 U.S. 701).  Meaning, final policymaking authority is the sole purview of the actual  nine member District School Board of Miami-Dade County, Florida.  To be sure, Fla. Stat. § 1001.41(1)  which describes the powers of school boards, states that those powers include the authority to, "Determine policies and programs consistent with state law and rules deemed necessary by it for the efficient operation and general improvement of the district school system."  Fla. Stat. § 1001.41 (2025). As such, Plaintiff's claim for municipal liability based solely on the actions of Principal Sanchez must fail because he does not have the power to establish final School Board policy respecting School Board employment matters.  See Scala, 971 F. Supp. at 533.  In short, the School Board's liability under § 1983 may not be based on the doctrine of *respondeat superior*.  See Whitaker v. Miami-Dade Cnty., 126 F. Supp. 3d 1313, 1319 (S.D. Fla. 2015).

As such both Counts of Plaintiff's Complaint fail and judgment must be entered against the Plaintiff.

> **B.      Plaintiff Cannot Prove The Existence of A Policy, Custom Or Practice Of the School Board That Is Necessary To Maintain Claims Under §1981 Via Operation of § 1983**

There are two ways Plaintiff may establish a constitutionally repugnant School Board policy that would subject the School Board to liability under § 1983: (1) citing to an officially promulgated School Board policy or (2) proving an unofficial custom or practice of the School

6

Board shown through repeated acts of the final policymaker for the School Board.  See Whitaker v. Miami-Dade Cnty., 126 F. Supp. 3d at 1319.  Plaintiff alleges no official or unofficial School Board policy in her Complaint.  Furthermore, she is unaware whether or not Principal Sanchez's alleged discrimination against her was the product of a School Board policy.  (Statement of Undisputed Facts ¶14).  This omission and lack of proof is enough to require judgment against her as to both of her § 1981 claims.

Assuming arguendo that Plaintiff would seek to establish that Principal Sanchez's actions were an "unofficial policy" or "practice" (something she has definitely not done in either her Complaint or deposition testimony), to prove § 1983 liability against the School Board based on unofficial custom or practice, Plaintiff must establish a practice that although not authorized by written law or express policy, is so permanent and well settled as to constitute a 'custom or usage' with the force of law.  Whitaker, 126 F. Supp. 3d at 1320.  Here, Plaintiff's Complaint does not even attempt to do that.  Her allegations concern only actions that Principal Sanchez took against her. Plaintiff testified at deposition that she is unaware of any other employees of the School Board experiencing the same discrimination she alleges she experienced and is unaware of whether or not Principal Sanchez discriminated against anyone else.  (Statement of Undisputed Facts, ¶ 14).

Discriminatory infractions that constitute widespread abuse to notify the supervising official [in this case the School Board] of an actionable custom must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences.  See Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990).  The incidents Plaintiff points to took place in a short period of time between August 22, 2022 and October 2022. (Plaintiff Depo at p. 73-74/lines 19-25; 1-17 and p. 188/lines 9-17).  Normally random acts or isolated incidents are insufficient to establish a custom or policy.  Depew v. City of St. Marys, 787 F.2d 1496, 1499 (11th Cir 1986);  See Buzzi v. Gomez,

62 F. Supp. 2d 1344 (S.D. Fla. 1999) (holding that even five incidents of discrimination over a three year period would be insufficient to substantiate a widespread custom violative of § 1983); Prieto v. Metropolitan Dade Cnty., 718 F. Supp. 934, 938-939 (S.D. Fla. 1989) (four isolated incidents over two years involving the Plaintiff does not establish the existence of a custom under § 1983); Whitaker, 126 F. Supp. 3d at 1321 (four isolated shootings in one year did not establish a widespread custom and usage with the force of law).

The only discriminatory actions cited by Plaintiff consist of the following all taking place within a period of approximately two (2) months:  (a) she claims Principal Sanchez made unwanted advances towards her on two (2) occasions (Complaint [DE 1] ¶16-25; Plaintiff Depo at p. 44-45/lines 9-25; 1-14); (b) she claims four (4) personnel investigations were initiated against her (Statement of Undisputed Facts ¶3-10); and (c) she claims she was placed on an alternate assignment away from Plam Springs Middle School ("PSMS"). (Statement of Undisputed Facts ¶11).  Given the aforementioned precedent, these allegations even if true, would not be enough to establish an unofficial custom or practice.

Even if these events did constitute a custom or practice under 11th Circuit precedent (and they do not), Plaintiff cannot provide evidence that the final policy maker - the nine members of School Board - were actually aware of these alleged instances of discrimination.  Plaintiff's Complaint fails to allege that the School Board was aware of Principal Sanchez's purported conduct.  While Plaintiff claims without corroboration or documentation that she complained of Mr. Sanchez's alleged discriminatory conduct to administration, she has no evidence and does not even claim that these complaints ever reached the members of the School Board itself. (Plaintiff's Depo at p. 63/lines 4-21; and p. 82-84/lines 11-25; 1-25; and 1-7).   If the nine member School Board was not aware of these alleged instances of misconduct, they cannot tacitly authorize them

or show deliberate indifference to the conduct that would expose the School Board to any liability. See Brooks v. Scheib, 813 F. 2d 1191, 1193 (11th Cir. 1987).

Plaintiff's inability to show a "custom and usage" of discrimination and her failure to show that the nine member School Board was aware of such a custom is fatal to her claims and judgment must be awarded to the School Board.

**C.      Plaintiff Suffered No Actionable Adverse Employment Actions**

The test and evidentiary burdens for establishing intentional discrimination or retaliation under § 1983 are the same as those used in Title VII cases.  Arrington v. Cobb Cnty., 139 F. 3d 865, 873 (11th Cir. 1998).  To prove an adverse employment action under Title VII, an employee must show, *inter alia,* a serious and material change in the terms, conditions, or privileges of employment. See Davis v. Town of Lake Park, 245 F.3d 1232, 1239 (11th Cir. 2001).  An employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances. Id.

The adverse employment actions Plaintiff claims occurred consist of four (4) personnel investigations that were initiated against her (Statement of Undisputed Facts ¶3-10); and she claims she was placed on an alternate assignment away from Plam Springs Middle School ("PSMS"). (Statement of Undisputed Facts ¶11).

The Eleventh Circuit has held that the initiation of an internal investigation of this type against an employee does not constitute an adverse employment action.  Rademakers v. Scott, 350 Fed. Appx. 408, 412–13 (11th Cir.2009).  An internal investigation is not an adverse employment action when it does not result in a significant change in employment status, such as termination,

demotion, failure to promote, significant reassignment or a significant change in benefits. Vandesande v. Miami-Dade Cnty., 431 F. Supp. 2d 1245, 1254 (S.D. Fla. 2006).

While Plaintiff was found to have violated School Board policies due to misconduct against students and colleagues at the conclusion of each of the four (4) personnel investigations against her, the School Board never completed the disciplinary process to impose discipline against her. Plaintiff resigned from employment before any discipline could be levied. (Statement of Undisputed Facts ¶ 12-13).  It is true that Plaintiff was placed on alternate assignment pending the outcome of the four (4) personnel investigations against her, but such temporary reassignments are not adverse employment actions.  See Sampath v. Immucor, Inc., 271 F. App'x 955, 962 (11th Cir. 2008) (finding that temporary reassignment was not adverse employment action); Hyde v. K.B. Home, Inc., 355 F. App'x 266, 269 (11th Cir. 2009) (holding temporary change in work assignment without change in permanent job classification and without tangible harm is not an adverse employment action).

As such, Plaintiff is unable to establish she suffered an adverse employment action that would entitle her to maintain either her discrimination or retaliation claims under § 1981.

**D.      Plaintiff Cannot Show That The School Board's Reasons For Initiating Personnel Investigations Against Her Were Pretextual**

As described above, none of the employment actions identified by Plaintiff legally qualify as adverse employment actions.  Moreover, even if the actions taken against Plaintiff were enough for her to establish that element of a prima facia discrimination or retaliation case (and they are not) for each of these actions the School Board has legitimate non-discriminatory reasons for taking the actions.

In each of the four (4) personnel investigations against her, the investigations were initiated due to the complaints of either students, parents or other employees. (Statement of Undisputed Facts ¶¶ 3-10). When asked what information she had to show that these investigations were not legitimate, Plaintiff only responded by claiming that she was deprived of due process during the investigations because she did not think the investigators did a good job, despite the fact that she was given a full opportunity to participate in the investigations, provide her own statements and even offer critiques of the findings. (Plaintiff's Depo, pp. 217-219/lines 11-25; 1-25; and 1-25).

Applying the McDonnel Douglas burden-shifting analysis, Plaintiff must prove that the School Board's proffered reasons for these investigations are merely a pretext for discrimination/retaliation. See McDonnell Douglas Corp. v. Green, 93 S. Ct. 1817 (1973). Moreover, "[A] plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason, at least not where, as here, the reason is one that might motivate a reasonable employer." Combs v. Plantation Patterns, 106 F.3d 1519, 1543 (11th Cir.1997). Plaintiff's claims that she was deprived of due process and criticisms of the investigators do not negate or show that these investigations were founded and conducted on illegitimate grounds. Finally, her placement on alternate assignment was also legitimate since it was predicated on the fact that there were four (4) investigations pending against her. (Statement of Undisputed Facts ¶ 11).

Therefore, Plaintiff cannot show that any of the reasons given for the actions taken with regard to her employment were pretextual and as such her claims under § 1981 must fail.

## IV.    CONCLUSION

Based on the foregoing, no genuine issues of material fact exist in this case and the School Board is entitled to judgment as a matter of law.  As such, the School Board respectfully requests that this Court grant its Motion for Summary Judgment on Plaintiff's meritless §1981 claims awarding judgment in favor of the School Board on all counts and for such further relief that this Court deems proper under the circumstances, including awarding the costs of litigation.

Respectfully submitted,

Walter J. Harvey, General Counsel
The School Board of Miami-Dade County, Florida
1450 NE 2nd Avenue, Room 430
Miami, FL 33132

By: *Christopher J. La Piano*
　　　　Christopher J. La Piano
　　　　Associate General Counsel
　　　　Florida Bar No. 0059157
　　　　Attorney for Defendant
　　　　cjlapiano@dadeschools.net
　　　　Telephone (305) 995-1304
　　　　Facsimile (305) 995-1412

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically served on this <u>15th</u> day of December 2025, pursuant to the CM/ECF requirements to the persons on the attached service list:

By: *Christopher J. La Piano*
   Christopher J. La Piano

<u>**SERVICE LIST**</u>

Christopher J. La Piano, Esq.
Associate General Counsel
The School Board of Miami-Dade County, Florida
1450 NE 2nd Avenue, Room 430
Miami, FL 33132

Kyle J. Lee
Lee Law, PLLC
1971 West Lumsden Rd., Suite 303
Brandon, FL 33511
Kyle@kyleleelaw.com